AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Central District of California



FILED
CLERK, U.S. DISTRICT COURT

JUL 2 4 2019

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

| | |
|---|---|
| United States of America | |
| v. | Case No.   19 MJ03021 |
| TYROME LEWIS, | |
| Defendant | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of December 20, 2018, in the county of Los Angeles in the Central District of California,

the defendants violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Conspiracy to Interfere with Commerce by Robbery and Interference with Commerce by Robbery |
| 18 U.S.C. § 924(c) | Brandishing and Use of a Firearm In Furtherance of a Crime of Violence |
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute Controlled Substances |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/S/
*Complainant's signature*

Stephen J. May, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  7/24/2019

/S/   ALEXANDER F. MacKINNON
*Judge's signature*

City and state:  Los Angeles, California

Hon. Alexander F. MacKinnon
U.S. Magistrate Judge
*Printed name and title*

Arrest Warrant/Detention



### <u>AFFIDAVIT</u>

I, Stephen J. May, being duly sworn, declare and state as
follows:

### I.  <u>INTRODUCTION</u>

1.    I am a Special Agent ("SA") with the Federal Bureau of
Investigation ("FBI") and have been so employed for the past 20
years.  From September 1999 through December 2003, I primarily
worked as a Bank Robbery Investigator in the San Francisco
Division of the FBI.  From December 2003 to the present, I have
worked as a Bank Robbery Investigator in the Los Angeles
Division of the FBI.  And since May 2005, I have also been the
Bank Robbery Coordinator in the Los Angeles Division of the FBI.

2.    As a Bank Robbery Investigator and Bank Robbery
Coordinator in the Los Angeles Division of the FBI, I
investigate bank robbery cases assigned to me, and review,
analyze, and disseminate investigative data (including bank
surveillance photographs) on nearly all bank robberies that
occur in the Central District of California.  Since May 2005,
there have been more than 3,000 bank robberies in the Central
District of California.

3.    Since October 2013, I have also been the lead FBI
Agent for the San Gabriel Valley Violent Crime Task Force, which
works in conjunction with Task Force Officers from the Los
Angeles County Sheriff's Department to investigate commercial
and retail robberies.

4.    On February 27th and 28th of 2014, I received basic
training (Cellular Survey Analysis and Geo-location) from the

FBI Cellular Analysis and Survey Team ("CAST"), which included utilizing cellular tower logs to identify a subject phone or subjects phones of different crimes, even when it was not clear whether a cell phone was in use during the commission of the crime.  I have also analyzed tower dump data sets and historical cell site data sets for my own FBI cases and other local police departments' investigations.

5.    In connection with the bank robbery and commercial/retail robbery investigations in which I have participated, I have used a variety of investigative techniques, including witness interviews, speaking with law enforcement agents and officers, reviewing surveillance images and cellular telephone data, and reviewing physical evidence.  As a result of this experience and my conversations with other law enforcement personnel, to include FBI Special Agents and Local Law Enforcement Detectives experienced with commercial robbery investigations, I am familiar with the methods used by individuals to commit commercial robberies as well as effective investigative methods to solve them

## II. PURPOSE OF AFFIDAVIT

6.    This affidavit is made in support of a criminal complaint against TYROME LEWIS for violations of 18 U.S.C. §§ 1951(a) (Conspiracy to Interfere with Commerce by Robbery and Interference with Commerce by Robbery) and 924(c) (Brandishing and Use of a Firearm in Furtherance of a Crime of Violence), and 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute Controlled Substances).

7. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. STATEMENT OF PROBABLE CAUSE

5. Los Angeles County Sheriff's Department, the Federal Bureau of Investigation, and other law enforcement agencies, are investigating a series of robberies, consisting of at least 35 robberies. Based on information set forth below, law enforcement has identified LEWIS as one of the organizers and leaders of the pharmacy robberies under investigation.

### A. The December 20, 2018 Glendale Robbery

6. On December 20, 2018, three individuals, identified as TERRELL MITCHELL ("T. MITCHELL"), DARRELL MITCHELL ("D. MITCHELL"), and DEANDRE BONNEY ("BONNEY") committed an armed robbery of Westco Pharmacy, 1217 N. Central Avenue #AA, Glendale, California, 91202. The three individuals entered the pharmacy. Upon entering, one of them brandished a handgun and used to intimidate and control pharmacy employees. The other two robbers then stole a variety of prescription medications. Following the robbery, T. MITCHELL, D. MITCHELL, and BONNEY fled in a Nissan Altima. Law enforcement identified the vehicle and

a high-speed chase ensued.  Following the pursuit, T. MITCHELL, D. MITCHELL, and BONNEY were arrested and a firearm, namely, a 9mm Taurus handgun, loaded with at least eight rounds in the magazine, was recovered from the vehicle.  All three have been charged federally in CR 19-149-JAK, a copy of which is attached hereto as Exhibit 1 and incorporated fully by reference herein.

7.   Law enforcement has identified 424-297-6258 as LEWIS's phone number based on the following:

a.   Based on my review of records in Coplink, an inter-agency law enforcement report sharing system, LEWIS's phone number, listed with the Los Angeles County Probation Office, was 424-297-6258.

b.   Law enforcement obtained a court order pursuant to 18 U.S.C. § 2703(d), authorized by the Honorable Paul L. Abrams, United States Magistrate Judge, in 19-mj-1556.  Based on my review of the records provided by Facebook in response to that Order, the phone number 424-297-6258 is the verified phone number for a Facebook account with the user name "Paul Bubie Rivera."  The registered email accounts for this account are "lewis.tyrome@yahoo.com" and "tyrome.s.lewis.9@facebook.com."

c.   In addition, as set forth below, Confidential Witness 1 ("CW-1") has identified the 424-297-6258 number as LEWIS's phone number.

8.   Based on my review of phone records provided by phone companies for numbers associated with LEWIS (i.e., the 424-297-6258 number), D. MITCHELL, and T. MITCHELL, I learned that LEWIS

was in touch with D. MITCHELL and T. MITCHELL's phones on the day of the December 20, 2018 robbery.

9.   Based on my review of historical cell site records, provided pursuant to warrants,[1] I learned that LEWIS's cell phone (424-297-6258) was utilizing cell phone towers near the location of the December 20, 2018 robbery.

10.   Based on my interview with CW-1,[2] a member of the conspiracy, who has admitted his role in the conspiracy, I learned the following:

a.   CW-1 identified LEWIS as the organizer and leader of the December 20, 2018, Glendale robbery.  CW-1 stated that LEWIS picked out the location for the robbery and provided details to the participants as to how it should be conducted, including what medications to target.  CW-1 stated that LEWIS would scout the locations in advance.  CW-1 stated that LEWIS traveled to the location of the robbery on December 20, 2018, in order to oversee the robbery.  As mentioned above, CW-1 identified 424-297-6258 as LEWIS's phone number.

---

[1] Law enforcement has obtained at least three separate warrants for historical cell site records and/or GPS pings, corresponding to different dates and/or data, related to LEWIS's cell phone (424-297-6258).  In addition, law enforcement has obtained two separate historical cell tower dumps for information related to robberies identified as part of this suspected conspiracy.  The cell site evidence discussed herein is based on the information obtained from the records obtained pursuant to those warrants.

[2] CW-1 is cooperating with law enforcement in the hopes of receiving potential consideration in CW-1's pending federal criminal matter.  In order to protect CW-1's identity, CW-1's criminal history, role in the conspiracy, and gang affiliation have all been omitted.

Along with the December 20, 2018, CW-1 has also implicated LEWIS as the organizer of multiple additional robberies.

**B.    Involvement in Other Robberies Under Investigation as Part of the Conspiracy**

8.    I have reviewed reports related to the armed robbery of the October 8, 2018, robbery of the Fullerton Medical Pharmacy, 1401 S. Brookhurst Road, Fullerton, California, 92833. Following the robbery, an employee of that pharmacy reported seeing someone acting suspicious, apparently casing the store, inside the pharmacy three days prior to the robbery (October 5, 2018).  The employee provided a security camera image of this individual.  I have reviewed this image and compared it to a booking photograph of LEWIS.  Based on my review, the individual inside the pharmacy on October 5, 2018, appears to be LEWIS.

11.    Based on my review of historical cell site records and GPS location alerts, I have learned that LEWIS's phone (424-297-6258) was utilizing cell towers in the vicinity of and at the time of the following additional pharmacy robberies:

a.    May 31, 2018: Apple RX Pharmacy, 17601 Lakewood Boulevard, Bellflower, California, 90706;

b.    July 31, 2018: Cerritos Pharmacy, 13325 Artesia Boulevard, Cerritos, California, 90703;

c.    September 1, 2018: Olive Branch Pharmacy, 2070 S. Central Avenue, Los Angeles, California, 90011;

d.    September 19, 2018: Bolsa Medical Arts Pharmacy, 15262 Goldenwest Street, Westminster, California, 92683;

e.    September 21, 2018: Coslo Pharmacy, 9301 E. Telegraph Road, Pico Rivera, California, 90660;

f.    September 26, 2018: BT Pharmacy, 14254 Beach Boulevard, Westminster, California, 92683;

g.    October 8, 2018: Fullerton Medical Pharmacy, 1401 S. Brookhurst Road, Fullerton, California, 92833[3];

h.    October 13, 2018: Olive Branch Pharmacy, 2811 S. San Pedro Street, Los Angeles, California, 90011;

i.    November 3, 2018: Aloha Drugs, 5055 W. El Segundo Boulevard, Hawthorne, California, 90250;

j.    December 3, 2018: Courtesy Drugs Pharmacy, 3180 E. Florence Avenue, Huntington Park, California, 90255;

k.    December 12, 2018: Medicine Shoppe Pharmacy, 2795 W. Lincoln Avenue, Anaheim, California, 92801;

l.    April 27, 2019:  Health Mart Empire Pharmacy, 1340 Massachusetts, Riverside California, 92507;

m.    June 29, 2019:  Santa Maria Pharmacy, 16279 Paramount Blvd., Paramount, California, 90723; and

n.    July 6, 2019: Claremont Pharmacy, 358 S. Indian Hill Blvd., Claremont, California, 91711.[4]

12.  Each of these robberies share a common modus operandi, including targeting smaller pharmacies (commonly referred to as independent or "mom-and-pop" pharmacies), placing prescription

---

[3] This was the robbery where law enforcement alleges that LEWIS cased/scouted the pharmacy on October 5, 2018 as noted above.

[4] Three individuals, EUGENE HALCROMB, CURTIS HOUSTON, and DOMINIQUE THOMPSON have been charged by federal Complaint for their involvement in this armed robbery, following which a firearm was recovered near the location where HALCROMB, HOUSTON, and THOMPSON were arrested.  A copy of this Complaint, 19-mj-2964, is attached as Exhibit 2 and incorporated fully by reference herein.

drugs they took into trash bags and/or trash cans from the pharmacy, using a black semi-automatic handgun, forcing employees to open the medication/prescription drug vault/safe, taking the store employees' cell phones and discarding them later thereby preventing the store employees from immediately calling the police. Law enforcement does not believe that LEWIS entered the stores to commit the robberies himself. Rather, law enforcement believes that LEWIS organized and led the robbery crews, and traveled to the locations to oversee the robberies.

13. Based on my review of arrest reports and LEWIS's criminal history reports, I learned that LEWIS was convicted on January 9, 2018 of second-degree burglary of a Walgreens pharmacy, for a burglary that occurred on September 6, 2017. LEWIS was sentenced to 180 days in jail and three years of probation.

//

//

## IV. CONCLUSION

14. For all the reasons described above, there is probable cause to believe that LEWIS has committed violations of 18 U.S.C. §§ 1951(a) (Conspiracy to Interfere with Commerce by Robbery and Interference with Commerce by Robbery) and 924(c) (Brandishing and Use of a Firearm in Furtherance of a Crime of Violence), and 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute Controlled Substances).

/s/
_____
STEPHEN J. MAY, Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me
this 24th day of July, 2019.

/s/ ALEXANDER F. MacKINNON
_____
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 1

FILED

2019 MAR -8 PM 2: 19

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2019 Grand Jury

UNITED STATES OF AMERICA,

              Plaintiff,

         v.

TERRELL MITCHELL,
DARRELL MITCHELL, and
DEANDRE BONNEY,

              Defendants.

CR No. 19-00149—JAK

I N D I C T M E N T

[18 U.S.C. § 1951(a): Conspiracy
to Interfere with Commerce by
Robbery and Interference with
Commerce By Robbery; 21 U.S.C.
§§ 841(a)(1), (b)(1)(C):
Possession With Intent to
Distribute Oxycodone; 18 U.S.C.
§ 924(c)(1)(A)(ii): Possess, Use,
Carry, and Brandish a Firearm in
Furtherance of and During and in
Relation to a Crime of Violence
and a Drug Trafficking Crime; 18
U.S.C. § 2(a): Aiding and
Abetting]

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1951(a)]

A.   INTRODUCTORY ALLEGATIONS

     At all times relevant to this Indictment:

     1.   Westco Pharmacy, a retail pharmaceutical provider, located

at 1217 N. Central Avenue, Glendale, California (the "Westco

Pharmacy"), sold and distributed products in, and affecting,

1  interstate and foreign commerce, including products manufactured

2  outside of the state of California by Accord Healthcare, Actavis,

3  Amneal Pharmaceuticals, ANI Pharmaceuticals, Aurobindo

4  Pharmaceuticals, Camber Pharmaceuticals, Dava, Mylan, Leading Pharma,

5  Par, and Tris.

6    2. Accord Healthcare, a pharmaceutical manufacturer, was

7  located at 1009 Slater Road, Durham, North Carolina, with its

8  international headquarters in the United Kingdom.

9    3. Actavis, also known as Teva Pharmaceutical, a

10 pharmaceutical manufacturer, was located at 1090 Horsham Road, North

11 Wales, Pennsylvania, with its international headquarters in Israel.

12   4. Amneal Pharmaceuticals, a pharmaceutical manufacturer, was

13 located at 118 Beaver Trail, Glasgow, Kentucky, with its

14 international headquarters in Switzerland.

15   5. ANI Pharmaceuticals, a pharmaceutical manufacturer, was

16 located at 210 Main Street, Baudette, Minnesota.

17   6. Aurobindo Pharmaceuticals, a pharmaceutical manufacturer,

18 was located at 279 Princetown Hightown Road, East Windsor, New

19 Jersey, with its international headquarters located in India.

20   7. Camber Pharmaceuticals, a pharmaceutical manufacturer, was

21 located at 1031 Centennial Avenue, Piscataway, New Jersey.

22   8. Dava, also known as Endo International, a pharmaceutical

23 manufacturer, was located at 400 Kelby Street, Fort Lee, New Jersey,

24 with its international headquarters located in India.

25   9. Leading Pharma, a pharmaceutical manufacturer, was located

26 at 3 Oak Road, Fairfield, New Jersey.

27   10. Mylan, a pharmaceutical manufacturer, was located at 1000

28 Myland Road, Canonsburg, Pennsylvania.

11.   Par, also known as Endo International, a pharmaceutical manufacturer, was located at One Ram Ridge Road, Chestnut Ridge, New York, with its international headquarters located in India.

12.   Tris, a pharmaceutical manufacturer, was located at 2031 US Highway 130, Monmouth Junction, New Jersey.

B.   OBJECT OF THE CONSPIRACY

Beginning on a date unknown, and continuing to on or about December 20, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants TERRELL MITCHELL ("T. MITCHELL"), DARRELL MITCHELL ("D. MITCHELL"), and DEANDRE BONNEY ("BONNEY"), and others known and unknown, conspired and agreed with each other to knowingly and intentionally interfere with commerce by robbery, in violation of Title 18, United States Code, Section 1951(a).

C.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.   Defendants T. MITCHELL, D. MITCHELL, and BONNEY would contact each other to discuss and plan the robbery of the pharmacy.

2.   Defendants T. MITCHELL, D. MITCHELL, and BONNEY would coordinate travel to and from the robbery.

3.   Defendants T. MITCHELL, D. MITCHELL, and BONNEY would enter a pharmacy and commit the robbery.

4.   During the robbery, defendant D. MITCHELL would brandish a firearm to control pharmacy employees, while defendants T. MITCHELL and BONNEY would fill trash bags with the pharmacy's prescription medications.

D.     OVERT ACTS

  In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about the following dates, defendants T. MITCHELL, D. MITCHELL, and BONNEY, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

  Overt Act No. 1:    On December 20, 2018, defendants T. MITCHELL, D. MITCHELL, and BONNEY traveled to the Westco Pharmacy for the purpose of committing an armed robbery.

  Overt Act No. 2:    On December 20, 2018, defendants T. MITCHELL, D. MITCHELL, and BONNEY entered the Westco Pharmacy to commit an armed robbery.

  Overt Act No. 3:    On December 20, 2018, defendant D. MITCHELL brandished a firearm, namely, a black and silver handgun, and used it to control and intimidate Westco Pharmacy employees E.A. and E.S.

  Overt Act No. 4:    On December 20, 2018, defendants D. MITCHELL, T. MITCHELL, and BONNEY ordered Westco Pharmacy employee E.A. towards the back of the pharmacy.

  Overt Act No. 5:    On December 20, 2018, defendants T. MITCHELL and BONNEY removed approximately 145 bottles of prescription medications from the narcotics safe of the Westco Pharmacy, including those manufactured outside the state of California by Accord Healthcare, Actavis, Amneal Pharmaceuticals, ANI Pharmaceuticals, Aurobindo Pharmaceuticals, Camber Pharmaceuticals, Dava, Mylan, Leading Pharma, Par, and Tris, with an approximate retail value of $3,382.

1     Overt Act No. 6:     On December 20, 2018, defendants

2    D. MITCHELL, T. MITCHELL, and BONNEY fled the Westco Pharmacy with

3    approximately 145 bottles of prescription medications.

COUNT TWO

[18 U.S.C. §§ 1951(a), 2(a)]

On or about December 20, 2018, in Los Angeles County, within the Central District of California, defendants TERRELL MITCHELL ("T. MITCHELL"), DARRELL MITCHELL ("D. MITCHELL"), and DEANDRE BONNEY ("BONNEY"), and others known and unknown, each aiding and abetting the other, obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce by knowingly and willingly committing robbery, in that defendants T. MITCHELL, D. MITCHELL, and BONNEY unlawfully took and obtained property consisting of approximately 145 bottles of prescription medication, with an approximate retail value of $3,382, belonging to the Westco Pharmacy, located at 1217 N. Central Avenue, Glendale, California, a provider of prescription medication, the inventory of which travels in interstate and foreign commerce, from the person and in the presence of employees of the Westco pharmacy, against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

On or about December 20, 2018, in Los Angeles County, within the Central District of California, defendants TERRELL MITCHELL, DARRELL MITCHELL, and DEANDRE BONNEY, and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and intentionally possessed with intent to distribute oxycodone, a Schedule II narcotic drug controlled substance.

COUNT FOUR

[18 U.S.C. §§ 924(c)(1)(A)(ii), 2(a)]

On or about December 20, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants TERRELL MITCHELL, DARRELL MITCHELL, and DEANDRE BONNEY, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly used and carried a firearm, namely, a black and silver Taurus, model PT 111 Millennium G2, 9mm caliber handgun, bearing serial number TJW70898, during and in relation to, and possessed that firearm in furtherance of, a crime of violence, namely, interference with commerce by robbery, in violation of Title 18, United States Code, Section 1951(a), as charged in Count Two of this Indictment, and a drug trafficking crime, namely, possession with intent to

//

//

1    distribute oxycodone, in violation of Title 21, United States Code,

2    Sections 841(a)(1), (b)(1)(C), as charged in Count Three of this

3    Indictment, and, in so doing, brandished that firearm.

4                                    A TRUE BILL

5

6                              _____/S/_____

                                    Foreperson

7

8    NICOLA T. HANNA
     United States Attorney

9

10

11   LAWRENCE S. MIDDLETON
     Assistant United States Attorney

12   Chief, Criminal Division

13   JUSTIN R. RHOADES
     Assistant United States Attorney

14   Chief, Violent and Organized
     Crime Section

15

16   JEFF P. MITCHELL
     Assistant United States Attorney

17   Deputy Chief, Violent and
     Organized Crime Section

18   JEFFREY M. CHEMERINSKY
     JOSEPH D. AXELRAD

19   Assistant United States Attorneys
     Violent and Organized Crime

20   Section

21

22

23

24

25

26

27

28

                                       9

# EXHIBIT 2

AO 91 (Rev. 11/11)  Criminal Complaint

COPY

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>EUGENE DARRYL HALCROMB,<br>CURTIS WAYNE HOUSTON JR., and<br>DOMINIQUE DEWANN THOMPSON,<br><br>Defendants | Case No. 19MJ 02964 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of July 6, 2019 in the county of Los Angeles in the Central District of California, the

defendants violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a)<br>18 U.S.C. § 924(c) | Interference with Commerce by Robbery<br>Brandishing and Use of a Firearm In<br>Furtherance of a Crime of Violence |

This criminal complaint is based on these facts:

*Please see attached affidavit.*          ☒ Continued on the attached sheet.

/s/
_____
*Complainant's signature*

Sabrina Ferguson, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  July 19, 2019

**JEAN P. ROSENBLUTH**
*Judge's signature*

City and state:  Los Angeles, California

Hon. Jean Rosenbluth, U.S. Magistrate Judge
*Printed name and title*

**Arrest**
**Warrant/Detention**

LODGED

2019 JUL 18 PM 2:35
CLERK U.S.
CENTRAL...LOS...
BY:...

<u>**AFFIDAVIT**</u>

I, Sabrina Ferguson, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed for approximately one year.   From May through September 2018, I learned to become a trained investigator at the FBI's Basic Field Training Course in Quantico, Virginia.   From October 2018 to the present, I have worked full-time on a violent crime squad in the West Covina Resident Agency ("RA") of the FBI Los Angeles Division.

2.   I have received training on a variety of investigative techniques, including witness interviews, speaking with law enforcement agents and officers, reviewing surveillance images and cellular telephone data, and reviewing physical evidence.

3.   As part of my SA duties, I work closely with SA Stephen J. May, a Bank Robbery Investigator with FBI since September 1999. Additionally, since May 2005, SA May has been the Bank Robbery Coordinator for the Los Angeles Division of the FBI.   SA May has also been the lead FBI Agent for the San Gabriel Valley Violent Crime Task Force since October 2013, which works in conjunction with Task Force Officers from the Los Angeles County Sheriff's Department to investigate commercial and retail robberies.

4.   On February 27 and 28, 2014, SA May received basic training (Cellular Survey Analysis and Geo-location) from the

1

FBI Cellular Analysis and Survey Team ("CAST"), which included utilizing cellular tower logs to identify a subject phone or subjects phones of different crimes, even when it was not clear whether a cell phone was in use during the commission of the crime. SA May has also analyzed tower dump data sets and historical cell site data sets for his own FBI cases and other local police departments' investigations.

5. Through my experiences as a trained investigator, as well as consultations with SA May and other law enforcement personnel to include Local Law Enforcement Detectives experienced with commercial robbery investigation, I have gained an understanding of the methods used by individuals to commit commercial robberies, as well as effective investigative methods to solve them.

## II. PURPOSE OF AFFIDAVIT

6. This affidavit is made in support of criminal complaints against and arrest warrants for EUGENE DARRYL HALCROMB ("HALCROMB"), CURTIS WAYNE HOUSTON JR. ("HOUSTON"), and DOMINIQUE DEWANN THOMPSON ("THOMPSON") for violations of 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery) and 18 U.S.C. § 924(c)(1)(A)(ii) (Brandishing and Use of a Firearm In Furtherance of a Crime of Violence).

7. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there

is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

8. As set forth below, on July 6, 2019, HALCROMB, HOUSTON, and THOMPSON committed an armed robbery of a pharmacy in Claremont, California. During the robbery, HALCROMB, HOUSTON, and THOMPSON targeted and stole prescription drugs. HALCROMB brandished a handgun and used it to control the pharmacy employees. Following the robbery, a high-speed pursuit began. At the end of this pursuit, HALCROMB, HOUSTON, and THOMPSON fled from their vehicle (a brown/bronze Kia Soul). Shortly thereafter, law enforcement arrested HALCROMB, HOUSTON, and THOMPSON. In that same area (near where HALCROMB, HOUSTON, and THOMPSON had abandoned their vehicle), law enforcement recovered a black handgun that matched the firearm used in the robbery. Law enforcement brought both victims from the robbery to the location where HALCROMB, HOUSTON, and THOMPSON for a field show-up. Both victims identified HALCROMB, HOUSTON, and THOMPSON as the three robbers. Inside the abandoned Kia Soul, law enforcement located a red sack containing medications consistent with what the medication that was stolen during the robbery. During a subsequent Mirandized interview, HALCROMB confessed to his role as the gunman in the robbery.

3

a.    In addition, as summarized briefly below, law enforcement is investigating a number of robberies of pharmacies that appear to be related.   In three of the other robberies, all committed in the last three to four months, a Kia Soul, consistent with the vehicle utilized in this robbery, was used by the two armed robbers.

### IV. STATEMENT OF PROBABLE CAUSE

**A.    The July 6, 2019 Claremont robbery**

1.    The Armed Robbery

9.    Based on my training and experience, as well as my review of reports taken by the Claremont Police Department ("CPD") officers that responded to the robbery, I am aware of the following:

a.    On July 6, 2019, at approximately 11:08 a.m., Claremont Pharmacy, located at 358 South Indian Hill Boulevard, Claremont, California, was robbed by three black males armed with a black handgun.   The robbers stole numerous pill bottles of prescription drugs, as well as a blue Chase Bank bill pouch and rolls of change totaling $3,691.95.   The robbers also stole an employee's iPhone 7s, which was worth approximately $600.00. After a vehicle pursuit, all three men were apprehended and arrested.   Surveillance footage from the pharmacy showed that HALCROMB was in possession of the handgun.

b.    The CPD interviewed witnesses to the robbery who provided the following information:

i.    Pharmacy owner N.H. had his/her back to the door when the three black males entered the pharmacy.   When

4

he/she turned around, they were jumping over the counter.   The robbers forced N.H. over to the cabinet where the Schedule II narcotics were stored and told him/her that they wanted Hydrocodone and Promethazine.   One of the robbers held a black handgun.   N.H. told the robbers that they could take whatever they wanted because he/she did not want them to hurt anyone.

   ii.   Pharmacy employee T.D. was counting pills when he/she looked up and saw three black males run into the pharmacy.   They were all wearing sweatshirts covering their faces and one had a black handgun.   The robbers grabbed T.D. and took his/her phone out of his/her hand, then moved T.D. to another side of the store.   T.D. heard the robbers tell N.H. to open the controlled drugs drawer from where he/she hid.

   c.   The CPD reviewed surveillance footage, which revealed the following information:

   i.   Based on the review of the video by the responding officer, at approximately 11:08 a.m., three individuals (subsequently identified as HALCROMB, HOUSTON, and THOMPSON) ran into the pharmacy and jumped over the counter. The three men fought with pharmacy employee T.D., took his/her iPhone, and moved him/her to a different part of the store against his/her will.   The robbers then forcibly moved N.H. toward the location of the Schedule II narcotics.   N.H. opened the locked cabinet with the narcotics in it and the robbers started throwing the narcotic bottles into a large red sack. At approximately 11:10 a.m., all three robbers fled the location toward their vehicle.

ii.   The individual subsequently identified as HALCROMB is seen holding the black handgun throughout the whole robbery.

2.   Pursuit and Arrest of HALCROMB, HOUSTON, and THOMPSON

10.   Based on my review of CPD reports I learned the following.  Following the robbery, at approximately 11:10 a.m., multiple CPD officers observed a brown Kia Soul with yellow paper dealership plates that read "CERRITOS NISSAN" leaving the Claremont Pharmacy parking lot.  As the vehicle exited the parking lot and traveled south along Indian Hill Boulevard, an officer positioned himself behind the vehicle and began to follow it.  Through the hatch back of the vehicle, the officer could see that the vehicle was occupied by at least three individuals, and that the rear passenger had dreadlocks, which matched the general description of the robbers.  As the Kia Soul began to accelerate away from the CPD officer, the officer activated his red and blue emergency lights and siren. The Kia Soul then accelerated to approximately 60 miles-per-hour and failed to stop.  Over the course of the pursuit by law enforcement, the Kia Soul made numerous traffic violations.

11.   The vehicle pursuit concluded at an Interstate 10 freeway on-ramp when HOUSTON jumped out of the driver's seat as the vehicle was moving and fled over the north fence next to the freeway.  HALCROMB and THOMPSON also exited the vehicle, jumped over the fence and fled.  When HALCROMB exited the vehicle, the officer saw that he was carrying clothing and that something was

6

wrapped in the clothing.  When HALCROMB jumped over the fence, a black semi-automatic handgun flew out of the clothing.  After jumping a fence, HOUSTON, HALCROMB and THOMPSON ran west through the rear parking lot of a church and jumped a gate into the rear yard of 1910 Royalty Dr.  Officers saw HOUSTON running across the front 1900 Royalty Dr.  Officers chased HOUSTON and HOUSTON eventually complied with officers' commands and was taken into custody.  Officers identified HALCROMB and THOMPSON walking together on the east side of 1902 Royalty.  Officers arrested HALCROMB and THOMPSON.

12.  Following the vehicle pursuit and apprehension of all three robbers, law enforcement searched the abandoned vehicle. Law enforcement located a large red sack found inside the suspect vehicle.  Inside the sack, the officer  saw that there were numerous pill bottles of narcotics, a blue Chase Bank bill pouch and rolls of change.  Later, employee N.H. looked into the red sack and confirmed that the property was from Claremont Pharmacy.

13.  In addition, an officer located, laying on the ground in the church parking lot, where the three had jumped the fence, a loaded black 9mm magazine and, nearby, a 9mm semiautomatic Glock 19 handgun.  There was no magazine in the handgun.  The officer pulled the slide back on the Glock and ejected a live round from the chamber.  A records check of the serial number of the Glock revealed that the handgun had been stolen in a residential burglary in Gardena on August 21, 2015.

14.  After HALCROMB, HOUSTON, and THOMPSON were arrested,

7

law enforcement transported N.H. and T.D. to the location where
HALCROMB, HOUSTON, and THOMPSON were being held. After being
read CPD field show-up admonishments and each witness being
separated at the time of viewing, in separate line-ups,
witnesses N.H. and T.D. both positively identified all three
suspects as the robbers from the pharmacy.

15. All clothing worn by the robbers was recovered,
photographed, and booked as evidence at the CPD. This clothing
was consistent with that worn during the robbery.

16. HALCROMB, HOUSTON, and THOMPSON were transported to
the CPD jail, where they were booked and their identities were
confirmed through their fingerprints.

### 3. Interview of HALCROMB

17. A CPD officer contacted HALCROMB, HOUSTON, and
THOMPSON separately and read them each their Miranda rights. All
three stated that they understood their rights.

18. HOUSTON and THOMPSON invoked and requested an attorney
while questioning.

19. HALCROMB provided a statement under Miranda:

a. HALCROMB informed the interviewing CPD officer
that he and two other robbers entered Claremont Pharmacy looking
for drugs, specifically Hydrocodone and Oxycontin.

b. HALCROMB admitted to holding the handgun seen in
the surveillance footage and reported on by the pharmacy
employees. HALCROMB told the CPD officer that he got the
handgun from someone else prior to the robbery.

c. HALCROMB stated that he was the front passenger

8

in the getaway vehicle. ~~HALCROMB~~ HOUSTON was the driver and THOMPSON
was in the back seat. HALCROMB stated that the Kia Soul might
belong to THOMPSON.

**B.   Other Robberies Under Investigation**

20.   Law enforcement is investigating a broad series of
armed robberies of pharmacies. The robbery described above
matches the general pattern and description of those in the
conspiracy. Further, the vehicle used in this robbery is
consistent with the vehicle utilized in at least three of these
robberies. As set forth above, a brown/bronze color Kia Soul
was used (and recovered following the pursuit) in the July 6,
2019 Claremont robbery. Based on my knowledge in the
investigation, I am aware that a similar vehicle has been
identified as being utilized in several other pharmacy
robberies:

a.   On April 10, 2019, there was a robbery of
"WestMED Pharmacy" robbery in Garden Grove, California,
committed by two men, one of whom was armed with a handgun. The
following day, a Garden Grove officer reviewed a nearby
business' video. Based on the review by the officer, the
officer saw the robber exit the pharmacy and enter a
brown/bronze Kia Soul. The Kia Soul had been parked on the
adjacent parking lot of the shopping center where WestMED
Pharmacy was located. The Kia Soul pulled out and drove west
into the parking lot. The Kia Soul reversed into the parking
space in front of the pharmacy. One of the robbers ran in the

9

front doors of the pharmacy.  After a brief moment, the robbers
exited the store and enter the vehicle.  The vehicle appeared to
be a 2014 Kia Soul-type vehicle, four doors, and brown in color.

b.    On June 11, 2019, there was an armed robbery of
an "Express Pharmacy" in Pomona, California, committed by two
men, one of whom brandished a handgun.   Based on Pomona Police
Department reports, the surveillance video shows a Kia Soul,
possibly silver metallic in color, pull up eastbound to the
front of the location.  The suspects exited the pharmacy and got
into the front and rear passenger doors.

c.    On June 29, 2019, there was an armed robbery of
"Santa Maria Pharmacy" robbery in Paramount, California,
committed by two men, one of whom brandished a handgun.  Based
on police reports, a witness saw a black male run out of the
pharmacy and enter a bronze Kia Soul.  There was another male in
the vehicle, seated in the driver's seat.  In addition, a review
of surveillance video of a nearby business by a Los Angeles
County Deputy showed a bronze Kia Soul driving through the
parking lot.

C.    **Relevant Criminal Convictions for HOUSTON, HALCROMB,
and THOMPSON**

21. I have reviewed the criminal histories for HOUSTON,
HALCROMB, and THOMPSON. Based on my review, I learned the
following:  HOUSTON was arrested for multiple robberies in 2002
and 2003. For the latter robbery, he was charged with violating
California Code, Penal Code § 212.5(c) (robbery in the second
degree) and sentenced to four years in prison.  In 2018,

10

HALCROMB was charged with violating California Health and Safety
Code 11351.5 HS (possession of cocaine base for sale) and
sentenced to 120 days in jail and three years of probation.

### D. Interstate Commerce

22. On July 17, 2019, SA May interviewed N.O. at the
Claremont Pharmacy. N.O. stated that all the drugs that were
stolen by the robbers during the July 6, 2019, Claremont
Pharmacy robbery were manufactured outside the state of
California. In addition, N.O. stated that the pharmacy receives
shipments of compound chemicals from Pennsylvania and New York
that are used to mix together certain prescriptions that are not
commonly manufactured by drug companies. These prescriptions
are then resold to patients based on a doctor's prescription.

//

//

11

## V.   CONCLUSION

23.   For all the reasons described above, there is probable cause to believe that HALCROMB, HOUSTON, and THOMPSON have committed violations of 18 U.S.C. § 1951(a) (Hobbs Act robbery) and 18 U.S.C. § 924(c)(1)(A)(ii) (brandishing and use of a firearm in furtherance of a crime of violence).

_____/s/_____

Sabrina Ferguson, Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me this __19__ day of July, 2019.

**JEAN P. ROSENBLUTH**
_____
UNITED STATES MAGISTRATE JUDGE

JEAN P. ROSENBLUTH